DECISION
{¶ 1} Relator, Dove Vending, Inc., commenced this original action requesting a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting compensation for temporary total disability ("TTD") to respondent Greg E. Ostrander beginning March 6, 2000, and to issue an order denying said compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issue a decision including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate found that the C-84 report signed by Dr. Viau constituted "some evidence" upon which the commission could rely in awarding TTD. The magistrate noted that in the C-84 report on which the commission relied, Dr. Viau based his opinion on an allowed condition with no reliance on a non-allowed condition, and the commission was within its discretion as the finder of fact in accepting that opinion as persuasive. Accordingly, the magistrate recommended that the requested writ should be denied.
 {¶ 3} Relator has filed objections to the magistrate's decision essentially rearguing the matters addressed in the magistrate's decision. For the reasons set forth in the magistrate's decision, the objections are overruled.
 {¶ 4} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Brown and Watson, JJ., concur.
 {¶ 5} In this original action, relator, Dove Vending, Inc., asks this court to issue a writ of mandamus compelling respondent Industrial Commission of Ohio ("commission") to vacate its order granting compensation for temporary total disability ("TTD") to respondent Greg E. Ostrander beginning March 6, 2000, and to issue an order denying the requested compensation.
 Findings of Fact {¶ 6} 1. In December 1999, Greg E. Ostrander ("claimant") sustained an industrial injury, and his workers' compensation claim was allowed for a lumbar sprain.
 {¶ 7} 2. In April 2000, an MRI showed a herniated disc "at the level of the L4-5 toward the right side with compression against the thecal sac and L5 roots."
 {¶ 8} 3. The claim was thereafter allowed for a herniated disc at "L4-5" with compression of the L5 root and thecal sac.
 {¶ 9} 4. In August 2001, another MRI was done, which showed a disc protrusion at the "L5-L6 intervertebral disc space" that was decreased in size "compared with the prior examination." There were no herniated or protruding discs at other levels.
 {¶ 10} 5. In October 2001, Albert L. Timperman, M.D., provided a comparison of the October 2001 MRI with the prior MRI in April 2000. He explained that the MRI readers had counted the vertebrae differently. The radiologist in October 2001 had said that the herniation was located at L5-6 "because the vertebra were counted from C1 down," which Dr. Timperman felt was the more accurate method of counting, whereas the reader at the VA hospital had counted differently. However, Dr. Timperman explained that "the disc herniation is at the exact same level on both studies."
 {¶ 11} 6. The claim was also allowed for major depression, and claimant filed requests for TTD compensation based on that condition, which requests were denied.
 {¶ 12} 7. In March 2002, claimant filed a motion requesting an additional allowance for "L4-5 degenerative disc disease" by aggravation or original causation.
 {¶ 13} 8. In March 2002, claimant filed a request for TTD compensation beginning March 6, 2002, based on "722.10 herniated disc," as certified by Michael R. Viau, M.D. However, the C-84 certification did not identify the specific location of the herniated disc.
 {¶ 14} 9. Dr. Viau's office notes are in the record. In his notes dated June 20, 2002, Dr. Viau explained that there was only one disc level with the described pathology. He said that, due to the different ways the level had been numbered, one could refer to it as L4-5 or L5-6, but he stated that the medical reports agreed that there was a single level at issue. He stated that, when the discogram showed that L4-5 was normal but showed pathology at L5-6, the symptomatic level was the one that he and Dr. Timperman had been focusing on from the beginning. Dr. Viau explained that, in this case, the tester who described the symptomatic level as L5-6 was referring to the disc condition initially described in the initial MRI as being at L4-5. Dr. Viau further stated that conservative treatment had failed and that the problem level might have to be fused.
 {¶ 15} 10. On June 20, 2002, Dr. Viau provided a revised C-84 report, adding the phrase "L4-5" so that the form certified TTD due to "722 Herniated Disc L4-5." (Emphasis sic.)
 {¶ 16} 11. On August 1, 2002, Dr. Viau again mentioned the confusion caused by the different numbering of the disc by the different physicians. However, he clarified that claimant "has 1 degenerative disc" and that, "whether you call it L5, L6, L4, 5 we're talking about the same level depending on who's getting the report and who's numbering the vertebra." Again, Dr. Viau said that surgery would be needed at one level if claimant remained symptomatic.
 {¶ 17} 12. In May 2002, a district hearing officer disallowed degenerative disc disease at L4-5 and denied TTD.
 {¶ 18} 13. In July 2002, a staff hearing officer modified that order, affirming the disallowance of degenerative disc disease at L4-5 but granting TTD from March 6, 2002 through July 3, 2002, based on the C-84 from Dr. Viau, which based TTD solely on the allowed herniated disc at L4-5.
 {¶ 19} 14. The commission refused further appeal and also denied reconsideration.
 Conclusions of Law {¶ 20} The employer argues that the commission abused its discretion in granting TTD compensation from March 6, 2002 through July 3, 2002, based on Dr. Viau's C-84 report. In mandamus, the issue is whether the commission cited "some evidence" to support its award. State ex rel. Bell v. Indus.Comm. (1995), 72 Ohio St.3d 575, 577.
 {¶ 21} First, it is fundamental that the commission's award of disability compensation must be based exclusively on allowed conditions. E.g., State ex rel. Chrysler Corp. v. Indus.Comm. (1998), 81 Ohio St.3d 158. In other words, TTD compensation may not be based even in part on a nonallowed condition. E.g., State ex rel. Stone Container Corp. v. Indus.Comm. (1997), 79 Ohio St.3d 163; State ex rel. Bradley v.Indus. Comm. (1997), 77 Ohio St.3d 239. Accordingly, a medical report basing disability in part on a nonallowed condition cannot constitute "some evidence" to support an award of compensation. E.g., Stone Container. However, a medical report is not disqualified simply because the reporting physician has based disability on an allowed condition without discussing the existence of a nonallowed condition and/or its effect on the claimant's ability to work. State ex rel. Quarto Mining Co. v.Foreman (1997), 79 Ohio St.3d 78.
 {¶ 22} Second, it is also settled that the existence of a nonallowed condition does not preclude TTD compensation. StoneContainer; Bradley; Quarto Mining. Where a claimant suffers from an allowed condition as well as a nonallowed condition, the question is whether the allowed condition, in and of itself, caused temporary and total disability. E.g., Stone Container.
Further, the commission is entitled to accept a physician's statement that TTD was caused by an allowed condition even where other medical evidence has indicated that a nonallowed condition contributed to the disability. See, generally, Chrysler Corp,
supra.
 {¶ 23} Last, the magistrate observes that the commission is the finder of fact and has sole authority to determine the credibility and weight of the evidence, including medical reports. See, e.g., State ex rel. Burley v. Coil Packing, Inc.
(1987), 31 Ohio St.3d 18; State ex rel. Teece v. Indus. Comm.
(1981), 68 Ohio St.2d 165; State ex rel. Pass v. C.S.T.Extraction Co. (1996), 74 Ohio St.3d 373.
 {¶ 24} In the present action, the magistrate considers whether the subject C-84 report dated June 20, 2001, constituted "some evidence" on which the commission could rely in awarding TTD. For the reasons set forth below, the magistrate concludes that the report provided "some evidence" on which the commission could rely and that the commission therefore did not abuse its discretion.
 {¶ 25} First, the magistrate notes that, in his C-84 certification of disability, Dr. Viau stated that TTD was caused by an allowed condition, without reference to or reliance upon any nonallowed condition. Thus, his report satisfies the requirement that TTD must be based on an allowed condition in and of itself, without regard to nonallowed conditions. See StoneContainer; Bradley; Quarto Mining; Chrysler Corp.
 {¶ 26} Further, there is no internal inconsistency or ambiguity on the face of the subject C-84 report that would disqualify it from evidentiary consideration. See, generally,State ex rel. Taylor v. Indus. Comm. (1995), 71 Ohio St.3d 582;State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649; State ex rel. Lopez v. Indus. Comm. (1994),69 Ohio St.3d 445. While it is true that Dr. Viau provided a revised C-84 that corrected the initial C-84 (which cited only a "herniated disc" as the cause of disability) and added the specific location of the disc, the magistrate observes that this revision did not contradict the prior C-84 but merely supplemented it, making it more precise. The clarification remedied a vague statement, providing an opinion on which the commission could rely. SeeEberhardt, supra.
 {¶ 27} Third, the magistrate finds no inconsistency between the opinion set forth in the subject C-84 and Dr. Viau's other opinions that would warrant removing the C-84 report from evidentiary consideration. See, generally, Eberhardt, supra;State ex rel. Owens-Corning Fiberglas Corp. v. Indus. Comm.
(1994), 70 Ohio St.3d 263; State ex rel. Malinowski v. HordisBros., Inc. (1997), 79 Ohio St.3d 342; Chrysler Corp., supra;State ex rel. Jennings v. Indus. Comm. (1982),1 Ohio St.3d 101; State ex rel. Paragon v. Indus. Comm. (1983),5 Ohio St.3d 72. Dr. Viau's notes demonstrate his belief that claimant suffered from the allowed condition, a herniated disc at L4-5 that could also be described as a herniated disc at L5-6 depending on the way the vertebrae were numbered. Apparently, claimant's spinal column had an extra vertebrae, which caused counting to be different depending on whether one counted from the base of the spine or the top. Dr. Viau provided a consistent and reasonable explanation of a confusing situation.
 {¶ 28} It is true that Dr. Viau also diagnosed degenerative disease at L4-5, which was not allowed in the claim. However, that diagnosis, in and of itself, does not mean that Dr. Viau was unable as a matter of law to render a medical opinion limited to the effect of the allowed condition. In the C-84 on which the commission relied, Dr. Viau based TTD on an allowed condition with no reliance on a nonallowed condition, and the commission was within its discretion as the finder of fact to accept that opinion as persuasive.
 {¶ 29} The notes and reports of Drs. Timperman and Viau attempted to clarify the situation and to explain the difficulty that they had in preparing their reports due to the numbering adopted in the first MRI at the VA hospital and hence by the commission in the claim allowance. However, it is clear that, in the subject C-84 report, Dr. Viau opined that claimant was rendered temporarily and totally disabled by the allowed herniation at L4-5. His office notes do not contradict this opinion but tend to explain, so that the commission was within its discretion to accept his opinion. Chrysler Corp; QuartoMining; Eberhardt.
 {¶ 30} The magistrate concludes that relator has not met its burden of proof in mandamus. Therefore, the magistrate recommends that the court deny the requested writ.